# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| JUSTIN BROWN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 11-3124-CV-S-DGK-P |
| | ) | |
| MICHAEL BOWERSOX, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER DENYING WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner, a convicted state prisoner currently confined at the South Central Correctional Center in Licking, Missouri, has filed pro se a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2006 convictions and sentences for first degree murder and kidnapping, which were entered in the Circuit Court of Pulaski County, Missouri. Petitioner's conviction was affirmed on direct appeal (Respondent's Exhibit K), and the denial of his motion for post-conviction relief filed pursuant to Mo. Sup. Ct. R. 29.15 was upheld on appeal thereof (Respondent's Exhibit R). Petitioner raises one (1) ground for relief. Respondent contends that the ground is without merit.

## FACTUAL BACKGROUND

In affirming the motion court's denial of petitioner's 29.15 motion, the Missouri Court of Appeals, Southern District, set forth the following facts:

> Victim disappeared from a cabin on a lake in Kentucky during the 4th of July holiday weekend in 2002. Brown was initially questioned by police via telephone on July 30, 2002. Brown said he had never met Victim. On July 31st, Brown was interviewed at the police station. After waiving his Miranda rights, Brown admitted that he had visited a friend at Victim's home on July 6th.

On August 1st, Brown agreed to take a polygraph test conducted by a Missouri Highway Patrol officer. Brown was informed of his rights, told how the polygraph machine worked and reminded that he was free to leave at any time. Brown signed a waiver of rights form and underwent the examination. The test revealed that Brown was not being truthful. The investigating officers said there was a good chance the prosecutor would work with Brown if he was truthful. Brown replied that he wanted to talk to the prosecutor and see whether they would work out a deal for cooperation before Brown said anything more. The prosecutor made an agreement with Brown that he would only be charged with misdemeanor tampering with evidence if: (1) he was not involved in the killing; (2) he provided a complete statement as to everything he knew about the murder; and (3) he helped officers find Victim's body and vehicle.

Thereafter, Brown took investigators to a cornfield near Portageville, Missouri, where Defendant said Victim was buried. They left the police department around 4:15 p.m. On the way to the cornfield, Brown and the officer stopped at McDonald's to get something to eat. After stopping in the cornfield, Brown directed the investigators to East Cape Rock Park along the Mississippi River, where Brown said the pistol used to kill Victim had been thrown into the river. Victim's body was recovered from the cornfield later that same day.

When Brown returned to the police station, he gave investigators a videotaped statement after waiving his <u>Miranda</u> rights. Brown said Mark Gill (Gill) had come to Brown's apartment and asked for help in getting rid of a body. Defendant described how Gill bound Victim and put him in his truck. Brown could see Victim breathing on the drive to the cornfield near Portageville. When they arrived at the cornfield, Gill made Brown start digging a hole. Gill threw Victim in the hole and shot him once in the head. Brown said he helped bury Victim because he was afraid Gill would shoot him, too. Afterwards, Gill dropped Brown off at his apartment to clean up. Brown and Gill went to St. Louis the next day. Brown told police that Victim's truck was in Paducah, Kentucky. Brown used Victim's ATM card to get cash and then gave the card back to Gill. This videotaped statement lasted less than an hour. At the end of the statement, an officer asked Brown if he had been threatened, and Brown said "No, sir." Brown stated that he was there of his own free will and that the detectives had told him numerous times he was free to leave whenever he wanted. He acknowledged that he had not been placed in handcuffs. He concluded by stating that he had no complaints about the treatment he received from the officers and that they were "good guys." Brown was allowed to go home that night after giving his statement.

On August 2nd, Brown gave a second videotaped statement. Brown again waived his <u>Miranda</u> rights and agreed to talk with the officers. In this second statement, Brown admitted that he had not told the whole truth during his prior interview. Brown admitted that he and Gill were both having money trouble. Gill

2

proposed that they get Victim, tape him up, take him out to the country and shoot him. Brown said he was "sketchy" about the plan at first but then he agreed to it. Brown admitted that he went to the store and bought duct tape to use in the crime. Gill grabbed Victim from behind and got Victim's ATM PIN before binding his hands and covering his mouth with duct tape. Brown admitted that he helped bind Victim with pull ties or zip ties. He and Gill dug a hole in the cornfield, and Gill shot Victim in the top of the head. At the end of the second videotaped statement, Brown once again acknowledged that he had not been treated badly by the investigating officers.

In addition to the underlying criminal file, the motion court also had before it the deposition of Brown's trial counsel. She testified that she challenged the admission of Brown's statements on every ground she believed was supported. She recalled "that the videotape on the third day was just a killer" because in it Brown was telling the police they were good guys and saying how wonderful they had been to him. Faced with those facts, she focused on the agreement between Brown and the prosecutor.

The motion court also observed Brown testify at the evidentiary hearing. According to Brown, there was additional evidence that he believed trial counsel should have presented in support of the motion to suppress the videotaped statements. According to Brown, he was taken by police to the state at 9:00 in the morning on both August 1st and 2nd. Each day, he was forced to sit in the lobby for nine or ten hours before his statement was taken. Brown claimed that the police told him he could not leave. Immediately after so testifying, however, Brown also stated that "I didn't have no way home. I didn't have no money on me or nothing, so I wasn't going to walk." On August 1st, Brown claimed that he had a hangover from drinking, smoking marijuana and taking ecstasy pills the prior evening. His hangover caused him to have a headache and be "not all of the way coherent." He said he had told his trial counsel about drinking and using drugs the night before both interviews. According to Brown, he also received no food or drink from police on either August 1st or 2nd while waiting in the lobby to give a statement. During cross-examination, Brown was asked about the length of time he had to wait to be interviewed each day, and he gave the following testimony:

> Q. All right. And they picked you up by nine o'clock in the morning each of those two days?
> A. Yes.
>
> Q. And brought you to the police station?
> A. Yes.
>
> Q. And put you in the lobby, and then walked away and had you sit there for ten hours?

3

> A. Yes. Yes, sir.
>
> Q. Okay. So it was about seven o'clock at night when they finally would get around to questioning you?
> A. Yes.
>
> Q. Okay. Now–
> A. It was dark outside. It was – it was in the evening.
>
> Q. All right. Well, on August 1st after they interviewed you, they drove out to Portageville and found Ralph Lape's body, didn't they?
> A. Yeah.
>
> Q. In the dark?
> A. No. It was – it was dusk. It was still daylight outside.
>
> Q. I thought you told the Judge just a second ago it was dark before they interviewed you.
> A. It was dark – it was dark when – on the second interview, it was dark outside.
>
> Q. Okay.
> A. On the first one – on the first one, it was right before dark when I took them out there, yeah.
>
> Brown also agreed that Portageville was 90 miles from the station where he was being questioned by police. Brown denied that police stopped and got him a meal before they arrived in Portageville.
>
> The motion court entered an order denying relief. The order contains a specific factual finding that Brown's testimony about sitting in the lobby ten hours before being interviewed was not credible. The judge determined that "[Brown's] version of the events is inconsistent, unreasonable , and refuted by his counsel and the record. The videotape of the confessions dispels any concern that [Brown] was 'hung over' or coerced." This appeal followed.

Respondent's Exhibit R, pp. 3-7 (footnotes omitted).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728

4

F.2d 1533, 1540 (8th Cir. en banc), cert. denied, 469 U.S. 842 (1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

**GROUND FOR RELIEF**

In his sole ground for relief, petitioner asserts a claim for ineffective assistance of trial counsel in that counsel, when preparing for a pretrial hearing on Brown's motion to suppress statements he made to the police, failed to conduct a reasonable investigation and present sufficient evidence at the hearing to support Brown's contention that his statements were involuntary. Doc. No. 1. The Missouri Court of Appeals, Western District, denied the ground for relief as follows:

> The allegations in Brown's motion were not self proving. Nunley v. State, 56 S.W.3d 468, 470 (Mo. App. 2001); Baker v. State, 180 S.W.3d 59, 64 (Mo. App. 2005). "Counsel is presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment." State v. Jones, 979 S.W.2d 171, 180 (Mo. banc 1998). Hence, Brown bore the burdens of proving by a preponderance of the evidence that trial counsel was ineffective. See Rule 29.15(I); Cole v. State, 152 S.W.3d 267, 268 (Mo. banc 2004). In reviewing the denial of a motion for post-conviction relief, the motion court's findings are presumed correct. Worthington v. State, 166 S.W.3d 566, 572 (Mo. banc 2005). An order denying post-conviction relief will be overturned only when the motion's court's findings of fact or its conclusions of law are clearly erroneous. Rule 29.15(k); Worthington, 166, S.W.3d at 572. In order to find clear error, a review of the entire record must leave the appellate court "with the definite and firm impression that a mistake has been made." Moss v. State, 10 S.W.3d 508, 511 (Mo. banc 2000).

---

[1] In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

. . . .

> In a post conviction proceeding, an appellate court defers to the motion court's superior opportunity to assess the credibility of the witness. State v. Simmons, 955 S.W.2d 752, 773 (Mo. banc 1997). Here, the motion court had before it all of the evidence presented at the initial hearing on the motion to suppress. It is apparent that the judge reviewed this evidence – including the videotaped statements – before ruling. The court also had before it the sworn testimony of counsel that she presented all meritorious arguments in support of the motion to suppress. Counsel focused on the agreement because her own review of the videotapes did not present any other grounds upon which to challenge the admissibility of Brown's statements. The motion court determined that the evidence provided by transcript of the suppression hearing, the videotapes and trial counsel's testimony was credible. We defer to that determination. McClanahan v. State, 276 S.W.3d 893, 895 (Mo. App. 2009).
>
> The only evidence tending to support Brown's version of events was his own testimony given at the evidentiary hearing on his post-conviction motion. It is well-settled that the motion court was not required to believe Brown's testimony. Clay v. State, 297 S.W.3d 122, 124 (Mo. App. 2009). After observing Brown testify, the court made specific factual finding that Brown's testimony was "inconsistent, unreasonable and refuted by his counsel and the record." Once again, we defer to that determination. Freeman v. State, 257 S.W.3d 186, 188-89 (Mo. App. 2008).
>
> After reviewing the entire record, we do not have a definite and firm impression that a mistake was made. Therefore, the findings and conclusions of the motion court are not clearly erroneous. See Rule 29.15(k); Williams v. State, 168 S.W.3d 433, 439 (Mo. banc 2005). Brown's point on appeal is denied, and the motion court's order denying his Rule 29.15 motion is affirmed.

Respondent's Exhibit R, pp. 7-9.

In order for petitioner successfully to assert a claim for ineffective assistance of trial counsel, petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" and that "the deficient performance" actually prejudiced him. Strickland v. Washington, 466 U.S. 668, 687-88. This Court, moreover, may not grant habeas relief unless the state appellate court's decision "was contrary to, or an unreasonable application of, the standard articulated by the [United States] Supreme Court in Strickland." Owens v. Dormire, 198 F.3d 679,

681 (8th Cir. 1999), cert. denied, 530 U.S. 1265 (2000). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 131 S. Ct. 770, 787 (2011) (quoting Strickland, 466 U.S. at 689). Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.

Petitioner argues that a reasonable attorney, through reasonable investigation, would have discovered and presented evidence that petitioner was held nine to ten hours, without being provided food or drink or use of the rest-room, before giving his statements while still under the effects of drugs and alcohol. Doc. No. 1-1, pp. 18-21. The Missouri Court of Appeals, Southern District, however, was not left with a firm impression that a mistake was made and found that petitioner failed to show that his counsel was ineffective because petitioner's version of events was solely supported by his own testimony and because the motion court properly considered the credibility of that testimony against the testimony of petitioner's counsel. Because the state court's determination was not based upon an "unreasonable determination of the facts in light of the evidence" or a misapplication of "clearly established Federal law," 28 U.S.C. § 2254(d)(1) and (2), petitioner's claim of ineffective assistance of trial counsel will be denied.

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28

U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that:

(1) the petition for writ of habeas corpus is denied;

(2) this case is dismissed with prejudice; and

(3) the issuance of a certificate of appealability is denied.

                                                       /s/ Greg Kays
                                                       GREG KAYS
                                                       UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: October 11, 2011